## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## SOUTHERN DIVISION

**CHARLENE CREAR**                                                        **PLAINTIFF**

**v.**                                                        **CAUSE NO. 1:12CV8-LG-JMR**

**GREGORY HORN, M.D., doing business**
**as Mississippi Coast OB/GYN, P.A., doing**
**business as St. Martin's Women's Clinic, P.A.**                **DEFENDANT**

## MEMORANDUM OPINION AND ORDER GRANTING
## DEFENDANT'S MOTION FOR PARTIAL SUMMARY
## JUDGMENT AS TO PUNITIVE DAMAGES

**BEFORE THE COURT** is the Motion for Partial Summary Judgment as to

Punitive Damages [88] filed by Gregory Horn, M.D., in this medical malpractice

lawsuit.  Charlene Crear has filed a response in opposition to the Motion, and Dr.

Horn has filed a reply.  Upon reviewing the submissions of the parties and the

applicable law, the Court finds that Dr. Horn is entitled to judgment as a matter of

law as to Crear's request for punitive damages.

## FACTS

Crear gave birth to a daughter in both 2000 and 2003.  (Pl.'s Resp., Ex. 3,

ECF No. 95-3; Def.'s Mot., Ex. A at 29, 31, ECF No. 88-1).  She and her husband

also wanted a son.  (Pl.'s Resp., Ex. 3, ECF No. 95-3).  They began trying to conceive

their third child in 2005, but she did not become pregnant as her menstrual cycle

had ceased.  (Def.'s Mot., Ex. A at 60, 63-65, ECF No. 88-1).  Crear also suffered

from pelvic and abdominal pain.  (*Id.* at 26, 67).  A gynecologist told her that her

inability to conceive was likely caused by polycystic ovary syndrome (PCOS).  (*Id.* at

64).  Her doctor prescribed birth control pills in an attempt to regulate her cycle, but the birth control pills caused excessive and prolonged bleeding.  (*Id.* at 66).  Her doctor then told her to "double up" on her birth control pills, but the bleeding did not stop.  (*Id.*)  An intrauterine device (IUD) was installed, but her pelvic and abdominal pain became worse.  (*Id.* at 66-67).  She was diagnosed with a bacterial infection that required hospitalization.  (*Id.* at 67).  As a result, the IUD was removed.  (*Id.*)

She later began seeing Dr. Horn because of her pelvic pain and her inability to conceive a child.  (*Id.* at 134).  Dr. Horn diagnosed her with endometriosis.  (Def.'s Mot., Ex. B, ECF No. 88-2).  When Crear saw him in October of 2010, she reported she had not had a menstrual period since 2007.  (Pl.'s Resp., Ex. 1 at 11, ECF No. 95-1).  Dr. Horn claims that she told him she did not want any additional children, and she rejected all conservative means of treatment offered, such as birth control pills and IUDs.  (Pl.'s Resp., Ex. 5 at 25-26, ECF No. 95-5).  According to Dr. Horn, she told him she had tried those conservative measures, but those measures had resulted in complications and she did not want to go through that again.  (*Id.*)  As a result, he recommended a total hysterectomy.  (*Id.* at 26).  He stated during his deposition that he never tells a patient that they must undergo a surgery.  (*Id.* at 25).  He explained that he would not have suggested a hysterectomy if Crear had informed him she wanted more children.  (*Id.* at 27).  He testified that he thought Crear needed a hysterectomy and it would be "clinically the best thing for her."  (*Id.*

at 26).  He also stated that she could have said she did not want a hysterectomy and he would have tried another means of treatment.  (*Id.* at 27).

Crear, on the other hand, claims that she and her husband told Dr. Horn they wanted additional children, but Dr. Horn said she would never be able to have another child regardless of whether she had the hysterectomy.  (Pl.'s Resp., Ex. 4 at 100, ECF No. 95-4).  She also contends that he told her that she would not have any more pain or bleeding if she had a hysterectomy and that she needed to undergo the procedure as soon as possible.  (Pl.'s Resp., Ex. 3, ECF No. 95-3).

Crear signed a surgical consent form that described the proposed surgery and her diagnosis.  (Def.'s Mot., Ex. B, ECF No. 88-2).  It also explained that, as a consequence of the surgery, she would not be able to have children, she would have no more menstrual periods, and she may need to undergo hormone replacement therapy.  (*Id.*)  The consent informed her that alternative treatments existed, such as pain medications, birth control pills, and hormones, and that menstrual irregularities sometimes improve with no treatment at all.  (*Id.*)

Dr. Horn performed a total hysterectomy on Crear in October of 2010, when Crear was twenty-six years old.  She now complains of headaches, more intense pelvic pain, insomnia, and other problems resulting from the surgery. (Pl.'s Resp., Ex. 3, ECF No. 95-3).  She also mourns the loss of her ability to have additional children.  (*Id.*)

Crear moved to Georgia following her surgery, and she began seeing a new gynecologist, Dr. Neil Gladstone, for treatment of the problems she suffered

following the surgery.  Dr. Gladstone reviewed Dr. Horn's records, including the pathology results that were obtained as a result of the surgery.  He informed Crear that her surgery was unnecessary, because the pathology report was negative, revealing no signs of endometriosis or any problems that would necessitate a hysterectomy.

Crear filed this lawsuit against Dr. Horn, and she designated Dr. Gladstone as an expert.  Dr. Gladstone has opined that Dr. Horn's decision to perform a hysterectomy was a breach of the standard of care, because Crear had expressed a desire for more children and her surgery pathology results were negative.  (Pl.'s Resp., Ex. 6 at 55-57, ECF No. 95-6).  Dr. Gladstone feels that if a patient's condition is not life-threatening, a hysterectomy should not be performed.  (*Id.* at 57).  He testified that conservative management, such as birth control pills or an IUD would have been preferable.  (Pl.'s Resp., Ex. 7 at 68, ECF No. 95-7).  Dr. Horn filed the present Motion seeking summary judgment as to Crear's request for punitive damages.

## DISCUSSION

"Mississippi law does not favor punitive damages; they are considered an extraordinary remedy and are allowed 'with caution and within narrow limits.'" *Warren v. Derivaux*, 996 So. 2d 729, 738 (¶27) (Miss. 2008).  Punitive damages may only be awarded when the "plaintiff shows by clear and convincing evidence that the defendant 'acted with actual malice, gross negligence which evidences a willful, wanton or reckless disregard for the safety of others, or committed actual fraud.'"

*Id.* at (¶26).  The court must consider "the totality of the circumstances to determine if a reasonable, hypothetical trier of fact could find either malice or gross neglect/reckless disregard."  *Doe ex. rel. Doe v. Salvation Army*, 835 So. 2d 76, 81 (¶17) (Miss. 2003).  "The kind of wrongs to which punitive damages are applicable are those which, besides the violation of a right or the actual damages sustained, import insult, fraud, or oppression and not merely injuries, but injuries inflicted in the spirit of wanton disregard for the rights of others."  *Summers ex. rel. Dawson v. St. Andrew's Episcopal Sch., Inc.*, 759 So. 2d 1203, 1215 (¶52) (Miss. 2000).

Crear argues that her request for punitive damages should be submitted to a jury for two reasons.  First, she has testified that she informed Dr. Horn she wanted additional children, and Dr. Horn testified that he would have offered her more conservative treatment if she had told him she wanted additional children.  Crear classifies Dr. Horn's testimony as an admission that it would have been wrong for him to perform a hysterectomy on her if he were aware of her desire for more children.  Second, she claims Dr. Horn told her that she would not be able to have children regardless of whether she had the surgery.  Third, according to Dr. Gladstone, the pathology report generated after her surgery revealed no problems that would have necessitated a total hysterectomy.

After reviewing the totality of the circumstances, the Court finds that a reasonable jury would not find clear and convincing evidence of either malice, gross disregard, or gross negligence on the part of Dr. Horn.  At this stage of the litigation, this Court must accept Crear's testimony that Dr. Horn knew she wanted

additional children but he told her she could have no more children.  Nevertheless, Crear's medical history reveals that she had experienced pain and infertility for years prior to her surgery.  It is undisputed that Crear experienced complications following previous conservative measures to resolve her pain and infertility.  She signed a consent form that discussed alternative treatment measures available as well as the effects of the surgery, including loss of child-bearing ability and the likely need for hormone replacement therapy.  There is no evidence before the Court that Dr. Horn intentionally deceived Crear regarding her ability to have children or that he failed to offer her more conservative treatment.  Furthermore, there is no evidence that Dr. Horn forced Crear to undergo the surgery.  It also should be noted that no expert opinion has been presented to the Court that Crear could have had children if she had not had the surgery, or that Dr. Horn could have determined prior to the surgery that Crear's ovaries and uterus were normal.  As a result, Dr. Horn is entitled to summary judgment as to Crear's request for punitive damages.

## CONCLUSION

Since Crear has not presented clear and convincing evidence that Dr. Horn acted with malice, reckless disregard, or gross negligence, Dr. Horn is entitled to summary judgment as to Crear's request for punitive damages.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Motion for Partial Summary Judgment as to Punitive Damages [88] filed by the defendant Gregory Horn, M.D., is **GRANTED**.

**SO ORDERED AND ADJUDGED** this the 10th day of January, 2013.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE