# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

**CHARLENE CREAR**                                                                                  **PLAINTIFF**

v.                                                     **CAUSE NO. 1:12CV8-LG-JMR**

**GREGORY HORN, M.D., doing business
as Mississippi Coast OB/GYN, P.A., doing
business as St. Martin's Women's Clinic, P.A.**            **DEFENDANT**

## ORDER DENYING PLAINTIFF'S MOTION FOR NEW TRIAL

**BEFORE THE COURT** is the Motion for New Trial [117] filed by the plaintiff Charlene Crear in this medical negligence lawsuit. She asserts that the jury's verdict on her lack of informed consent claim was against the great weight of the evidence. The defendant Gregory Horn, M.D., has filed a response in opposition to the Motion, and Crear has filed a reply. Upon reviewing the submissions of the parties and the applicable law, the Court finds that Crear's Motion for New Trial should be denied.

## BACKGROUND

Charlene Crear filed the present medical negligence lawsuit against Gregory Horn, M.D., alleging that Dr. Horn should not have performed a total hysterectomy on her and that he failed to obtain her informed consent before performing the hysterectomy. Following a four day trial, the jury returned a verdict in favor of Dr. Horn. Crear has filed the present Motion for New Trial, asserting that the jury's verdict was against the great weight of the evidence to the extent that the jury held that Horn had obtained informed consent from Crear.

# DISCUSSION

"The court may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court . . . ." Fed. R. Civ. P. 59(a)(1). "A new trial may be appropriate if the verdict is against the weight of the evidence, the amount awarded is excessive, or the trial was unfair or marred by prejudicial error." *Scott v. Monsanto Co.*, 868 F.2d 786, 789 (5th Cir. 1989) (citing *Smith v. Transworld Drilling Co.,* 773 F.2d 610, 613 (5th Cir. 1985)). "If the new trial is granted on evidentiary grounds, the jury's verdict must be 'against the great—not merely the greater—weight of the evidence.'" *Scott,* 868 F.2d at 789 (quoting *Conway v. Chem. Leaman Tank Lines, Inc.,* 610 F.2d 360, 362 (5th Cir. 1980)). "The standard at the trial level on a motion for a new trial is whether the verdict is against the clear weight of the evidence or will result in a miscarriage of justice." *G.A. Thompson & Co., Inc. v. Partridge*, 636 F.2d 945, 957 (5th Cir. 1981). The Fifth Circuit has explained, "[W]e must affirm the verdict unless the evidence – viewed in the light most favorable to the jury's verdict – points so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary [conclusion]." *Alaniz v. Zamora-Quezada*, 591 F.3d 761, 770 (5th Cir. 2009).

Crear argues that Dr. Horn and his medical expert, Dr. Paul Seago, admitted at trial that a feasible alternative treatment option existed for Crear's pelvic pain,

but Dr. Horn failed to inform her of that option. Specifically, she claims that she should have been provided the option of keeping one or both of her ovaries, and the failure to inform her of that option constituted the lack of informed consent. Neither party has objected to the instruction on informed consent provided to the jury at trial, which stated:

> The plaintiff, Charlene Crear, also charges that she did not give her informed consent for the medical procedure performed by Dr. Horn.
> A physician owes his patient the duty to inform and obtain consent with regard to the proposed treatment. One type of medical negligence involves the lack of informed consent. Informed consent originates from the theory that a competent adult has the right to control her body and to make an informed decision as to whether to authorize a medical procedure. When considering the adequacy of the information provided by a physician, you should consider whether the following were disclosed: (1) the diagnosis, (2) the nature and purpose of the proposed treatment, (3) the risks and consequences of the proposed treatment, (4) the probability that the proposed treatment will be successful, (5) the existence of feasible treatment alternatives, and (6) the prognosis if the proposed treatment is not given. With regard to risks, only material known risks must be disclosed. A known risk is one that is known to a careful, skillful, diligent and prudent practitioner. A plaintiff must present expert medical testimony that a risk is material.
> In order to demonstrate lack of informed consent, a plaintiff must also show that a reasonable patient would have withheld consent had she been properly informed. A plaintiff must also show that she would not have been injured had the appropriate standard of care been exercised.

At trial, Dr. Horn testified that he recommended removal of Crear's uterus as well as her ovaries and fallopian tubes, because he thought that would improve her situation and it was the most viable option for alleviating the pain she had suffered from for two years. He explained that he listened to Crear's history. She had told him that she had experienced years of pelvic pain that was progressively becoming

-3-

worse and she had seen numerous doctors but no one had been able to help her. According to Dr. Horn, she told him that she had to have something done about her pain. He thought she had endometriosis and her pain was so severe that it had not responded to ovarian suppression, so he felt that a total hysterectomy was her best option for ending her pain. In addition, he testified that Crear did not tell him she wanted more children; rather she told him something had to be done about her pain. He offered her birth control pills, but she refused to try them, because she had bad experiences with them in the past. He also testified that he had forewarned both Crear and her husband of the side-effects that she would experience as a result of the removal of her ovaries.

A consent form signed by Crear prior to the surgery was admitted into evidence. This form provided a list of several surgical options, Crear's diagnoses, an explanation of the nature and purpose of the proposed surgery, a list of the risks and consequences involved, a discussion of alternative treatments, and the prognosis if surgery is not done. The form stated:

> Along with removing your uterus, your ovaries, and your fallopian tubes may or may not be removed.
>
> You should discuss this in detail with your physician. Your ovaries are separate from your uterus. The ovaries make hormones that are necessary for you. If the ovaries are removed, most likely you will need to take hormones either by mouth, in the form of a patch, implant, or by injection.

(Consent Form at 2).

Dr. Donald Seago, an expert in the fields of gynecology and oncology, testified

that Dr. Horn performed the appropriate procedure on Crear and that Dr. Horn acted within the standard of care. He also opined that Dr. Horn acted within the standard of care for obtaining consent for the procedure. He agreed that removal of the ovaries and uterus provided Crear with the best opportunity for pain relief. He expressed his opinion that the surgery was successful in resolving her pain, based on the number of pain-related emergency room visits before and after the surgery. He testified that the consent form was an excellent consent form. He also explained that leaving the ovaries would have resulted in an opportunity for more pain and possibly more trips to the operating room for Crear.

When the testimony of Dr. Horn and Dr. Seago is considered as well as the consent form signed by Crear, there was sufficient evident to support the jury's verdict in this matter. As a result, the Motion for New Trial is denied.

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that the Motion for New Trial [117] filed by the plaintiff Charlene Crear is **DENIED**.

**SO ORDERED AND ADJUDGED** this the 1st day of May, 2013.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
CHIEF U.S. DISTRICT JUDGE